HENRY, Circuit Judge,
Dissenting.
The majority opinion is well-written and as thoughtful as always; nevertheless, in what I admit to be a close and difficult case, I must respectfully dissent. I write separately, first, simply to clarify how I think that AEDPA demands that we analyze this case and, second, because I disagree with the majority’s ultimate conclusion that Sandstrom should not apply retroactively.
I. The Scope of our Habeas Jurisdiction
Prior to the passage of AEDPA, we reviewed de novo any legal questions arising under our habeas jurisdiction. After the passage of AEDPA, however, that standard persists only where the state court failed to “adjudicate[ ] on the merits” the particular issue we are addressing. 28 U.S.C. § 2254(d); see LaFevers v. Gibson, 182 F.3d 705, 711 (10th Cir.1999) (“If the claim was not heard on the merits by the state courts, and the federal district court made its own determination in the first instance, we review the district court’s conclusions of law de novo ... ”). Otherwise, we are constrained by the more deferential standard of § 2254(d)(1) (permitting the grant of a writ of habeas corpus only where the state court adjudication “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States”). In a habeas case governed by AEDPA, then, the scope of our review depends upon determination of the ground(s) on which the state court(s) denied relief.
Here, Mr. Johnson raised the Sand-strom issue in three of his four state post-conviction petitions. The Kansas state courts denied each petition; we examine *1201 the decision of the highest state court to address each relevant petition. Examination of the three relevant decisions reveals four reasons (“adjudications] on the merits,” § 2254(d)) for the Kansas state court denials of relief: (1) Mr. Johnson, after raising the issue in his second petition for post-conviction relief (the 1985 petition) failed to appeal the denial of that petition; (2) Mr. Johnson failed to raise the issue at all in his third petition for post conviction relief (the 1991 petition); (3) Mr. Johnson failed to object, at trial, to the relevant jury instruction; and (4) the relevant jury instruction, in fact, remained constitutional even after Sandstrom. Each of the grounds for denial constitutes an adjudication on the merits and thus demands our § 2254(d)(1) deference. Even given this deference, however, the district court rejected grounds (1), (2), and (3). The district court did not explicitly address ground (4), presumably because Kansas failed to raise this argument.
On appeal, Kansas now abandons not only ground (4) but also grounds (1), (2), and (3); instead, Kansas relies only on an argument that Sandstrom should not benefit Mr. Johnson because Sandstrom should not apply retroactively. In so doing, of course, Kansas abandons the four grounds on which we would owe § 2254(d)(1) deference: the four issues actually “adjudicated on the merits” by the Kansas state courts. Since the Kansas state courts never relied upon (or even alluded to) the asserted non-retroactivity of Sandstrom, those courts did not adjudicate that issue-the issue now before us-on the merits; hence, § 2254(d)(1) is inapplicable and we are governed by our pre-AEDPA standards of review: in this case, de novo consideration of the retroactivity issue.[1]
In sum, then, I agree with the majority opinion that we must address, de novo, the retroactivity of Sandstrom. Since, however, I believe that the Kansas courts did not “adjudicated on the merits” the retroactivity issue, I would particularly omit the discussion found within Section 111(B)(2) of the majority opinion.
*1202 II. Whether Sandstrom Requires Retroactive Application
We turn, then, to the primary issue presented by this appeal: whether, under the law of retroactivity as that law stands today, Sandstrom requires retroactive application. As the majority explains, our inquiry proceeds in two steps: (1) Does Sandstrom present a “new rule of criminal procedure” and, if so, (2) Is that new rule one of “watershed” importance?[2] Teague v. Lane, 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Because I would conclude that Sandstrom does not constitute a new rule of criminal procedure (rather, Sandstrom merely constitutes an ‘old rule’), I do not reach the applicability of the watershed exception.
A. The Precedent
I begin by looking to the decisions of our sister circuits. The parties identify a circuit split on the issue of whether Sand-strom constitutes a new rule for purposes of Teague analysis; according to the parties three circuits have concluded that Sandstrom does constitute a new rule, while one circuit has concluded otherwise. Compare Cain v. Redman, 947 F.2d 817, 821-22 (6th Cir.1991); Prihoda v. McCaughtry, 910 F.2d 1379, 1382 (7th Cir.1990); and Hall v. Kelso, 892 F.2d 1541, 1543 n. 1 (11th Cir.1990) (assertedly each standing for the proposition that Sand-strom constitutes a new rule) with Mains v. Hall, 75 F.3d 10, 14-15 (1st Cir.1996) (assertedly standing for the proposition that Sandstrom does not constitute a new rule). On closer examination, however, these opinions are less helpful than the parties suggest.
First, the Seventh Circuit’s opinion in Prihoda v. McCaughtry, 910 F.2d 1379 (7th Cir.1990) is, quite simply, irrelevant to the question before our panel. In Prihoda, the Seventh Circuit concluded: “Any federal decision holding instruction 1100 unconstitutional therefore would be a new rule for purposes of Teague and could not be applied on collateral review.” Prihoda, 910 F.2d at 1382. Instruction 1100, as it turns out, is a jury instruction that, under Seventh Circuit precedent, unquestionably remains constitutional after Sand-strom — a question settled several years before Prihoda. See, e.g., Fencl v. Abrahamson, 841 F.2d 760, 770 (7th Cir.1988) (holding that instruction 1100 remains constitutional after Sandstrom and the Sand-strom progeny: “[W]e agree with the district court that no constitutional error was committed by the trial court [in] giving Jury Instruction 1100.”). The Prihoda language quoted above, then, simply states the unremarkable fact that, were the Seventh Circuit to now hold instruction 1100 unconstitutional after-all, that decision would constitute a ‘new rule.’ Whether or not such a decision would constitute a new rale is, of course, entirely irrelevant to the question of whether Sandstrom itself constitutes a ‘new rule.’
The Eleventh Circuit opinion cited by the parties does address the retroactivity of Sandstrom; the opinion, however, does not address whether Sandstrom constitutes a new rule for purposes of retroactivity. Rather, in a footnote, the Eleventh Circuit simply concludes: “Teague is no bar to the application of Sandstrom” because the Sandstrom rale constitutes a “bedrock, axiomatic[,] and elementary constitutional principle” that “diminishes the likelihood of an [in]accurate conviction.” Hall, 892 F.2d at 1543 n. 1 (quotation marks omitted). Given this conclusion *1203 (that, even if Sandstrom does constitute a new rule for Teague purposes, Teague’s ‘watershed’ exception is, in any case, applicable), the Eleventh Circuit had no reason to consider whether Sandstrom actually constituted a ‘new rule.’
We are left, then, with the Sixth Circuit’s decision in Cain and the First Circuit’s decision in Mains. The Sixth Circuit concluded that the correctness of the Sandstrom holding was, prior to the decision in Sandstrom itself, “susceptible to debate among reasonable minds,” as evidenced by the apparent “pervasive use” of that instruction just prior to the Court’s Sandstrom decision. Cain, 947 F.2d at 821. Thus, according to the Sixth Circuit, Sandstrom constitutes a new rule for purposes of Teague analysis. The First Circuit, on the other hand, classified Sand-strom as “a lineal descendant of [In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (holding that “the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the accused] is charged”)].” Mains, 75 F.3d at 14 (quotation marks omitted). “[Sandstrom ] simply held that an instruction which creates a presumption of fact violates due process if [that presumption] reheves the State of its burden of proving all of the elements of the offense charged beyond a reasonable doubt.” Id. (quotation marks omitted). In short, according to the First Circuit, “[Sandstrom ] does not constitute a ‘new rule’ ” for purposes of Teague retroactivity analysis. Id. at 15.
B. Facing the Issue
The issue is close. As the Supreme Court recognized as early as Teague itself, determination of whether the holding of a particular case constitutes a ‘new rule’ is often a task imbued with uncertainty: “It is admittedly often difficult to determine when a case announces a new rule, and we do not attempt to define the spectrum of what may or may not constitute a new rule for retroactivity purposes.” Teague, 489 U.S. at 301, 109 S.Ct. 1060. After careful consideration of the issue, however, I conclude that Sandstrom does not constitute a new rule for purposes of Teague retroac-tivity.
I so conclude based upon my understanding of three pre-Sandstrom decisions of the Supreme Court; I am convinced that these decisions compelled the Sandstrom result: Winship, 397 U.S. at 364, 90 S.Ct. 1068 (holding, as noted, that “the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the accused] is charged.”); Morissette v. United States, 342 U.S. 246, 275-76, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (holding that the Due Process Clause renders jury instructions unconstitutional where those instructions direct the jury to presume, from the defendant’s act of taking particular property, an intent to steal that property); and Mullaney v. Wilbur, 421 U.S. 684, 703-04, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (holding that the Due Process Clause dictates that, as to the intent element of first degree murder, the government bears the burden of proving, beyond a reasonable doubt, the absence of heat of passion). See Saffle v. Parks, 494 U.S. 484, 491, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (holding that a rule is ‘old’ where existing Supreme Court precedent “compel[led]” the result in the case providing the relevant rule).
I need look no further than Sandstrom itself for satisfaction that existing precedent (specifically: Winship, Morissette, and Mullaney) indeed compelled the result in that case. Sandstrom, of course, held unconstitutional a particular jury instruction where that instruction “had the *1204 effect of relieving the State of the burden of proof enunciated in Winship [i.e. the ‘beyond a reasonable doubt’ burden of proof] on the critical question of petitioner’s state of mind.” Sandstrom v. Montana, 442 U.S. 510, 521, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). According to Sand-strom itself, then, the Sandstrom holding is merely an application of Winship.
In applying Winship, the Sandstrom Court relied on both Morissette and Mul-laney for guidance. The Sandstrom Court noted that, as early as 1952, the Morissette Court had observed:
‘[T]he trial court may not withdraw or prejudge the [mens rea] issue by instruction that the law raises a presumption of intent from an act.... [Such a presumption] would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime.’
Sandstrom, 442 U.S. at 522, 99 S.Ct. 2450 (quoting Morissette, 342 U.S. at 274-75, 72 S.Ct. 240) (emphasis deleted). Similarly, in Mullaney, the Court, four years before Sandstrom, had unanimously concluded: “ ‘[The defendant’s] due process rights [were] invaded by [a] presumption casting upon him the burden of proving by a preponderance of the evidence that he had acted in the heat of passion upon sudden provocation.’ ” Sandstrom, 442 U.S. at 524, 99 S.Ct. 2450 (quoting Patterson v. New York, 432 U.S. 197, 214, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)).[3]
In light of Winship, Morissette, and Mullaney, then, the Sandstrom holding was hardly surprising. Given that the government must prove every element of every crime, specifically including the element of intent, beyond a reasonable doubt, and given that jury instructions shifting the burden of proof on the intent element violate due process, the Sandstrom conclusion as to the unconstitutionality of a jury instruction establishing a presumption of intent, upon proof of a voluntary act, was most certainly one “compelled]” by preexisting Supreme Court precedent. Saffle, 494 U.S. at 491, 110 S.Ct. 1257. Indeed, the extent to which prior Court precedent compelled the Sandstrom decision is strongly suggested by the Court’s unanimity in reaching the Sandstrom holding.
On the other hand, of course, and as noted by both the majority here and the Sixth Circuit in Cain, despite Winship, Morissette, and Mullaney, the Sandstrom jury instruction remained in widespread use at the time of the Sandstrom decision. Admittedly, this fact suggests some confusion as to whether pre-Sandstrom precedent in fact compelled the Sandstrom result. The Supreme Court, however, has labeled particular rules as ‘old’ even where conflicting authority existed at the time that the Court announced the given rule. See, e.g., Stringer v. Black, 503 U.S. 222, 230-31, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992) (giving retroactive effect to the Court’s decision in Clemons v. Mississippi, 494 U.S. 738, 741, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), despite the fact that several pre-Clemons lower court opinions held contrary to Clemons).
Given, then, my determination that Sandstrom itself broke no new ground— but, rather, merely applied existing precedent (Winship, Morissette, and Mullaney) to reach the result those eases compelled[4] *1205 —I would conclude that Sandstrom did not constitute a new rule for purposes of Teag-ue retroactivity.

. See, e.g., Battenfield v. Gibson, 236 F.3d 1215, 1234 (10th Cir.2001). Battenfield holds, albeit implicitly, that § 2254(d)(1) applies on an issue-by-issue basis, even where two particular issues are both part of the same 'claim of error.’ In other words, if a claim (in our case, the applicability of Sand-strom ) features several sub-issues (in our case, (1) does the given jury instruction run afoul of Sandstrom and, if so, (2) does Sand-strom apply retroactively), § 2254(d)(1) deference applies only to the sub-issue(s) actually adjudicated by the state court. See Battenfield, 236 F.3d at 1220 ("Because the [Oklahoma Court of Criminal Appeals (the "OCCA”) ] never addressed this issue [the prejudice component of Mr. Battenfield's ineffective assistance of counsel claim], we are free to exercise our independent judgment.”) (footnote omitted).
This holding is apparent through examination of the analysis conducted by the Batten-field court. In Battenfield, the OCCA had rejected Mr. Battenfield’s appeal based upon Mr. Battenfield's asserted failure to establish the deficient performance prong of his ineffective assistance of counsel claim; the OCCA had not reached consideration of the prejudice prong of the ineffective assistance claim.
The Battenfield court granted habeas relief upon making two determinations. The court first concluded that, under the § 2254(d)(1) standard, the OCCA unreasonably applied the relevant precedent in inquiring into whether Mr. Battenfield's attorney rendered deficient assistance. Having determined that Mr. Bat-tenfield's counsel's performance was in fact deficient, the court proceeded to further conclude, now under a de novo standard, that the petitioner had established resultant prejudice. Thus, the Battenfield court provided § 2254(d)(1) deference not to every sub-issue of the ineffective assistance of counsel claim but, rather, only to those issues actually adjudicated by the state court.

. Our case does not implicate the second Teague exception, that for new rules "plac[ing] certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.” Teague, 489 U.S. at 311, 109 S.Ct. 1060 (internal quotation marks omitted).

. The Sandstrom Court also noted the Court's admonition in Patterson: " '[A] state must prove every ingredient of an offense beyond a reasonable doubtQ and ... may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense.' ” Sandstrom, 442 U.S. at 524, 99 S.Ct. 2450 (quoting Patterson, 432 U.S. at 215, 97 S.Ct. 2319).

. See also Rose v. Clark, 478 U.S. 570, 580, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (referring to Sandstrom as merely "a logical extension of the Court’s holding in [Winship ] that *1205 the prosecution must prove every fact necessary to constitute the crime with which the defendant is charged”) (quotation marks omitted)