# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-4114

KIM HUYNH,

*Petitioner-Appellee,*

v.

EDWIN R. BOWEN,

*Respondent-Appellant.*

———————

**Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 7523—Joan Humphrey Lefkow**, *Judge.*

———————

ARGUED JUNE 4, 2004—DECIDED JULY 6, 2004

———————

**Before** FLAUM, *Chief Judge*, **and** DIANE P. WOOD **and** EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Kim Huynh was convicted of first degree murder and aggravated battery following a bench trial in the circuit court of Cook County, Illinois. Following his conviction he filed a motion for a new trial, arguing that he was denied his Sixth Amendment right to the effective assistance of counsel because his trial lawyer, Michael Johnson, had a conflict of interest growing out of his simultaneous representation of Huynh's codefendant, Phuc

Truong. The trial court denied the motion and the Illinois Appellate Court affirmed on Huynh's direct appeal. The Supreme Court of Illinois denied Huynh's petition for leave to appeal.

Huynh then filed a petition for a writ of habeas corpus in federal court raising one issue: that attorney Johnson had a conflict of interest which deprived Huynh of the effective assistance of counsel. The district court granted the writ and the State of Illinois appeals.

In September 1996, outside Tony's Pool Hall on Leland Avenue at Sheridan Road in Chicago, Huynh, Truong, and other members of a gang known as the "Gap Family" initiated a fight that resulted in the murder of a rival gang member, Kyanh Duong. Various witnesses testified during the trial about their observations on the day of the murder. Minh Nguyen, for example, saw a member of the Gap Family chasing some of his friends down an alley. He ran toward the scene and heard three or four gunshots. He testified that he saw Huynh putting a shiny dark object into his waistband. Forensics testimony showed that Huynh's left palm was exposed to gunshot residue, indicating that he had either handled, fired, or was in close proximity to a weapon when it was discharged. Other witnesses identified Huynh as a person involved in an altercation before, during, and after the murder. At the close of the evidence, the state trial judge found Huynh (and Truong) guilty. Huynh was sentenced to a term of 20 years.

The contention in Huynh's petition for a federal writ of habeas corpus was that attorney Johnson had a conflict of interest. The basis for the claim grew out of the prosecutor's opening statement, where he said that Truong had fought with a rival gang member the night before the fight and had vowed revenge. This was the first that defense counsel heard of this incident, one that gave Truong a motive for the murder. Attorney Johnson successfully moved to

exclude any evidence of the incident. Huynh now contends that the exclusion of Truong's motive evidence harmed him, apparently because it would somehow shift the blame to Truong. A nonconflicted attorney, representing only the interests of Huynh, would have, the argument goes, wanted the evidence of Truong's motive before the jury. The district court accepted this argument and granted the writ.

On appeal, the State contends that there was no impermissible conflict of interest and that the state appellate court's decision to that effect was not contrary to or an unreasonable application of *Cuyler v. Sullivan*, 446 U.S. 335 (1980), the decision the district court embraced when it granted the writ.

We must evaluate Huynh's case under the Antiterrorism and Effective Death Penalty Act, specifically 28 U.S.C. § 2254(d). Under the statute, federal habeas relief may not be granted with respect to a claim which was adjudicated on the merits in the state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To show that a decision was "contrary to" Supreme Court precedent, a petitioner can show that the state court reached a conclusion opposite to that of the Supreme Court on a question of law or that the state court decided a case differently than the Supreme Court "on materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). To show that a state court decision resulted in an "unreasonable application" of Supreme Court precedent, a petitioner must show that although the state court identified the correct rule of law, it unreasonably applied it to the

facts of his case. *Williams*. An unreasonable application is not simply what we might deem to be an incorrect or erroneous application of federal law. The standard is not met just because a federal court might disagree with the decision of the state court.

Because Huynh did not object to attorney Johnson's dual representation, we agree with the State that the applicable Supreme Court precedent is found in *Cuyler*. In that case the Court determined that in order to "establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 348. Not all cases of multiple representation result in a conflict of interest, and furthermore the mere *possibility* of a conflict is not sufficient to establish a violation of the Sixth Amendment.

Examining whether the decision of the Illinois Appellate Court was an unreasonable application of *Cuyler*, we note that the court looked to see whether an attorney with no obligation to a codefendant would have actually employed a different strategy or tactic. The court said that if it was necessary to speculate about whether a different strategy would have been employed, uncertainty is resolved against the defendant. The court determined that there was no actual conflict or even a potential conflict. Huynh's arguments were termed speculative.

We cannot say that the state court's decision was an unreasonable application of *Cuyler*. Huynh was charged under an accountability theory. Under Illinois law a person is legally accountable for the conduct of another when, "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid such other person in the planning or commission of the offense." 720 ILCS 5/5-2(c). A defendant's mere presence at the scene of

an offense is not by itself sufficient to sustain a conviction on an accountability theory. But a defendant may be held accountable for the acts of another pursuant to a common plan or purpose. *People v. Taylor*, 164 Ill. 2d 131 (1995). The "common design" rule provides that acts committed by one person in furtherance of a common plan are considered to be the acts of all parties to the agreement. All are equally responsible for the consequences of the acts. *People v. Cooper*, 194 Ill. 2d 419 (2000).

Given the accountability theory under which the state was proceeding, it seems likely that many, if not most, attorneys would have moved just as Johnson did to exclude the revenge testimony. Contrary to Huynh's argument, the testimony would not reduce his involvement in the fight. Huynh's presence at the scene of the fatal shooting, his participation in the attack, eyewitness testimony that he placed some shiny metal object in his waistband, his flight from the scene of the crime, and the fact that he tested positive for gunshot residue are what supported his conviction for the murder. It is true that the excluded "revenge" testimony would have given Truong a motive for the crime. But under the accountability theory, it would also have provided an explanation for Huynh's participation in the melee; that is, that the entire incident was gang-related, and Huynh and Truong were both members of the "Gap Family" gang. Excluding testimony about a motive for the murder by a Gap Family member was as helpful to Huynh as it was to Truong. Furthermore, even if some attorneys would have seen the situation differently and decided not to move to exclude the evidence, that does not show that the Illinois Appellate Court decision was an unreasonable application of *Cuyler*. Especially because the state was proceeding on an accountability theory, there may well be competing reasonable approaches to how to mount a defense for Huynh. The Illinois Appellate Court decision that Huynh cannot show that Johnson had an actual

conflict of interest which adversely affected his performance was not contrary to *Cuyler*. The judgment of the district court is REVERSED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*