# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-3452

BRIAN MIRANDA,

*Petitioner-Appellant,*

v.

BLAIR J. LEIBACH,

*Respondent-Appellee.*

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 01 C 2024—**Michael P. McCuskey**, *Chief Judge.*

———————

ARGUED FEBRUARY 10, 2004—DECIDED JANUARY 20, 2005

———————

Before RIPPLE, ROVNER, and WOOD, *Circuit Judges.*

ROVNER, *Circuit Judge.* A jury convicted Brian Miranda of first-degree murder, and the trial court sentenced him to serve 30 years in prison. After exhausting his state court remedies, Miranda petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied his petition. We affirm.

## I.

In the early evening of October 13, 1993, 15-year-old Michael Ryan was killed on the northwest side of Chicago

by a gunshot to the back of his head. On the following day, having learned that 16-year-old Frank Perez had been seen in the vicinity of the shooting and that Ryan had been having trouble with a boy named Frankie, police officers went to the Perez apartment to speak with him.

When the officers arrived at around 2:30 in the afternoon, Frank Perez was watching television along with Michael Chavez and Brian Miranda (ages 15 and 17, respectively) in the living room of the residence. Perez was summoned to the kitchen, where the rear entrance to the second-floor apartment was located. What happened next was disputed.

According to police officers, Perez, followed by Miranda and Chavez, voluntarily stepped outside of the apartment at the officers' request to answer questions about the shooting. After Chavez revealed to one of the officers that it was Perez who shot Ryan, Perez was arrested, handcuffed, and taken to a police station. Miranda and Chavez were not arrested, but voluntarily accompanied the police to the station for further questioning.

Miranda, Perez, and Chavez told a different story. They testified that as soon as Perez entered the kitchen, the police, who had entered the apartment without permission, handcuffed him on the spot. Officers then entered the living room with guns drawn, ordered Miranda and Chavez against the wall, frisked them, and handcuffed both of them. All three were then taken to the police station in handcuffs.

Miranda and Chavez were questioned separately at the station. Again, the circumstances surrounding that questioning were disputed. Police officers testified that neither Miranda nor Chavez was under arrest at that time, and that both young men voluntarily cooperated with the questioning. By contrast, Miranda testified that on arrival at the station, he was taken to a windowless holding room and handcuffed to a ring on a wall. Chavez testified that although his handcuffs were removed on arrival at the

station, he did not feel free to leave the station and, in fact, was not released until the following day, after he testified before a grand jury.

At approximately 3:30 that afternoon, Chavez told a detective during questioning that Miranda had supplied the gun that Perez had used to shoot Ryan. Armed with this information, police resumed questioning of Miranda.

Upon being confronted with Chavez's statement at around 4:00 p.m., Miranda confessed his involvement in the shooting and led police to the gun that Perez had used to kill Ryan. Shortly before 8:00 p.m., after the gun had been recovered, Miranda gave a formal statement under questioning by an Assistant State's Attorney and after being apprised, on the record, of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). That statement was transcribed by a court reporter and signed by Miranda.[1]

Miranda was charged with first-degree murder pursuant to an accountability theory. Under Illinois law, one person is legally accountable for a crime committed by another when, before or during the offense, he aids (or tries to aid) the planning or commission of the crime with the intent to facilitate or promote the commission of the crime. 720 ILCS 5/5-2(c); *see Huynh v. Bowen*, 374 F.3d 546, 548-49 (7th Cir. 2004); *McFowler v. Jaimet*, 349 F.3d 436, 439 (7th Cir. 2003).

---

[1] The record indicates that once Miranda was confronted with Chavez's statement, he gave a total of three statements acknowledging that he had supplied Perez with the gun that Perez used to kill Ryan, the last of these being Miranda's formal, court-reported statement. It appears that all three statements were similar if not identical in their substance. For convenience, we shall therefore refer to these statements collectively as Miranda's post-arrest statements or his confession.

Prior to trial, Miranda moved to quash his arrest and to suppress any and all statements (including the court-reported confession) that authorities had elicited from him pursuant to the arrest. It was Miranda's contention that police had arrested him at the Perez residence, well before they had any information linking him to the shooting and thus without probable cause. The trial judge conducted an evidentiary hearing at which Miranda, Perez, Chavez, three of the police officers who were present at the Perez residence, and a number of other individuals testified. At the conclusion of that hearing, the judge found that Miranda had been arrested without probable cause at the Perez residence. G2-3. The focus of the proceeding then turned to whether, as the State argued, Miranda's statements at the police station were sufficiently attenuated from his arrest as to demonstrate that those statements were the product of free will rather than the illegal arrest. *See Brown v. Illinois*, 422 U.S. 590, 603-04, 95 S. Ct. 2254, 2261-62 (1975). After entertaining further argument on that point, the trial judge concluded that Chavez's statement implicating Miranda in the crime was a sufficient intervening cause of Miranda's confession so as to purge the taint of the illegal arrest and render Miranda's confession voluntary and admissible at trial. C7, M38.

Miranda was tried before a jury. The State's evidence at trial revealed that Miranda, Perez, Chavez and Ryan had all belonged to a street gang known as the Imperial Gangsters. Perez headed the small, local section of that gang. Ryan and another member, Sean Joyce, had decided to withdraw from the gang, but neither had undergone what gang members referred to as a "violation," which entailed a three-minute beating from head to toe by the entire gang and was considered a prerequisite to a member being allowed to depart the gang. As a result, the gang had issued what members referred to as an S.O.S. or "smash on sight" order against Ryan and Joyce. Apparently, it was that order that

culminated in Ryan's death. Two months earlier, Ryan's mother had heard Perez threaten Ryan's life. On the evening of the shooting, Perez and Chavez went to Miranda's house, where Miranda supplied Perez with a .38-caliber automatic revolver that he had obtained from another gang member. Perez told Miranda that he needed the gun in order to "take care of business" with Ryan and Joyce. The three of them then rode their bikes around the neighborhood looking for Ryan and Joyce. They found Ryan at a nearby J.J. Peppers convenience store. After some discussion between Perez and Ryan, Ryan left the store with the others, ostensibly to take Perez to meet with Joyce. Ryan and Perez rode together on Perez's bike, with Ryan at the handles and Perez behind him. As the group bicycled to the meeting with Joyce, Perez took the gun that Miranda had given him from his pocket and shot Ryan in the head. Ryan fell to the ground; the others fled. Miranda and Perez rode their bikes to Perez's house, where Perez returned the revolver to Miranda, along with a sawed-off shotgun. After cleaning the revolver, Miranda hid the guns in his bedroom, where they remained until he led the police to them the next day.

Miranda's court-reported confession was published to the jury during the trial. P237-P249. In that statement, Miranda acknowledged, among other things, that he had given the revolver to Perez at Perez's request, that Perez told him he needed a gun in order to "take care of business," that he understood Perez to mean that he wanted to kill someone, that Perez told him it was either Ryan or Joyce that he meant to kill, that he accompanied Perez on the night of the shooting knowing this was Perez's intent, that he witnessed the shooting, that Perez used the gun he had given to him to kill Ryan, and that he hid that gun in his bedroom following the shooting.

Miranda testified in his own defense and repudiated certain aspects of his court-reported statement. He denied, for

example, that Perez told him on the night of the shooting that he was going to "take care of business" or that he was going to shoot anyone. He asserted that he had accompanied Perez on Perez's order. He denied seeing Perez take the gun out of his pocket to shoot Ryan. But he acknowledged having given the gun to Perez and then hiding that gun and the shotgun in his bedroom following the shooting. He testified that he and Ryan were good friends who had known each other since they were three years old.

The jury convicted Miranda of first-degree murder. The trial judge later sentenced Miranda to a prison term of 30 years. Miranda filed a written motion for a new trial, R03, which the trial judge denied. Omitted from the boilerplate arguments made in that motion was any challenge to the judge's attenuation ruling.

Miranda appealed his conviction to the Illinois Appellate Court, arguing that the trial court had erred in finding that his confession was sufficiently attenuated from his illegal arrest to be considered voluntary and admissible at trial. Miranda conceded, however, that he had not properly preserved the issue for appeal by raising it in his motion for a new trial. R. 9 Ex. A at 12; *id.* Ex. C at 3. In view of the omission, Miranda asked the appellate court to review this issue for plain error. R. 9 Ex. A at 12; *id.* Ex. C at 3. Miranda contended that the trial court, in holding that Chavez's inculpatory statement was a sufficient intervening cause of his confession, had overlooked the fact that Chavez's statement was the fruit of Chavez's own illegal arrest; consequently Chavez's statement could not serve to purge the taint of Miranda's illegal arrest from Miranda's confession. R. 9 Ex. A at 14 & *id.* Ex. C at 6-7, citing, inter alia, *People v. Avery*, 534 N.E.2d 1296, 1302 (Ill. App. Ct. 1989).

The appellate court affirmed Miranda's conviction. *People v. Miranda*, No. 1-96-1381, Summary Order (Ill. App. Ct. 1st

Dist. Aug. 29, 1997) (unpublished) (hereinafter, the "Summary Order"). In accord with Miranda's request, the court reviewed the trial court's decision to admit his confession into evidence for plain error. *Id.* at 1. The court acknowledged *Avery*'s holding that the inculpatory statement of one illegally arrested individual could not serve as a sufficient intervening cause of another illegally arrested person's confession. *Id.* at 3, citing *Avery*, 534 N.E.2d at 1302. However, the court found this case factually distinguishable from *Avery*:

> Unlike *Avery*, Chavez, a witness to the shooting, was not illegally arrested. His statement to the police not only provided them with probable cause to arrest defendant, but also was an intervening circumstance which dissipated the taint of the illegal arrest. The police officers here, moreover, did not engage in official misconduct, but acted on information collected from witnesses. Defendant, further, was given *Miranda* warnings prior to his confession. Although not much time elapsed between defendant's arrest and his subsequent confession, the key to whether the passage of time constitutes sufficient attenuation depends considerably upon whether any intervening circumstances occurred during the time period. As aforementioned, Chavez's statement to the police was a sufficient intervening circumstance which served to dissipate the taint of defendant's illegal arrest.

> For the foregoing reasons, the circuit court's finding of sufficient attenuation to purge the taint of the illegal arrest was not manifestly erroneous. Accordingly, the defendant's conviction and sentence are affirmed.

Summary Order at 4. The Illinois Supreme Court denied Miranda's petition for leave to appeal, and the United States Supreme Court subsequently denied his petition for a writ of certiorari.

Miranda subsequently filed a pro se petition for post-conviction relief in the Circuit Court of Cook County. R. 9 Ex. I. In that petition, he again challenged the admission of his confession into evidence. The trial court summarily dismissed the petition without conducting an evidentiary hearing. Although Miranda appealed from the dismissal of his post-conviction petition, he did not pursue the admission of his confession any further.

Having exhausted his state court remedies, Miranda filed a pro se petition for a writ of habeas corpus in the district court. The district court denied the petition in an unpublished order. R. 17.

At the outset, the court noted that a habeas petitioner ordinarily cannot pursue a Fourth Amendment challenge to his conviction in federal court so long as he had a full and fair opportunity to litigate the claim in state court. *Id.* at 3, citing *Stone v. Powell*, 428 U.S. 465, 482, 96 S. Ct. 3037, 3046 (1976). Miranda contended he was denied this opportunity in that the Illinois Appellate Court disposed of his Fourth Amendment claim based on a key factual determination (that Chavez was not under arrest) which lacked fair support in the evidentiary record. The district court found itself unable to resolve this contention definitively because the parties had not submitted the complete record of the trial court proceedings on Miranda's motion to quash his arrest and suppress his post-arrest statements. However, on the limited record before it, the court agreed with Miranda that there seemed to be a lack of record support for the notion that Chavez was not under arrest: the trial judge appeared to have found that Chavez, like Miranda, was handcuffed at the Perez residence, and Chavez himself had testified both that he was handcuffed at the apartment and that, despite the subsequent removal of the handcuffs at the police station, he did not feel free to leave until the following day, after he had testified before the grand jury. The court therefore assumed that Miranda had been deprived of a full and fair opportunity to litigate his Fourth Amendment

claim in the Illinois courts and that federal habeas review of that claim was permitted. R. 17 at 3-6.

The court rejected the State's argument that Miranda had committed a procedural default that blocked review of this claim in habeas corpus. Miranda had failed to pursue the Fourth Amendment issue in his post-trial motion for a new trial and the Illinois Appellate Court, in view of that default, had reviewed the issue solely for plain error. Nonetheless, the district court determined that Illinois courts do not follow a consistent practice with respect to issues omitted from post-trial motions. Specifically, Illinois cases reflect an inconsistency as to whether an exception for constitutional issues will permit review of such issues when they were raised at trial but not in a post-trial motion. Given the lack of uniformity vis-à-vis that exception, the district court concluded that the procedural default was not well enough established in Illinois law as to constitute an adequate and independent basis for the Illinois Appellate Court's decision. Therefore, federal review of the Fourth Amendment claim was not barred by the procedural default. R. 17 at 6-8.

Nonetheless, the district court concluded that habeas relief was foreclosed to Miranda on another ground. The premise of Miranda's Fourth Amendment claim was that because Chavez was under arrest without probable cause when he made the statement inculpating Miranda, his statement could not serve as a sufficient intervening cause of Miranda's confession that purged the taint of Miranda's own unlawful arrest. However, the district court found no binding authority holding that only legally obtained evidence can constitute a sufficient basis for breaking the chain of causation between a defendant's illegal arrest and his post-arrest confession. A holding to that effect would amount to a new rule of constitutional law, and *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060 (1989), precludes habeas relief based on a new constitutional rule. R. 17 at 8-9.

The district court denied Miranda's request for a certificate of appealability. R. 23; *see* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). We later issued such a certificate and appointed counsel for Miranda.

## II.

### A.   Procedural Default

We review de novo a district court's determination as to procedural default. *Page v. Frank*, 343 F.3d 901, 905 (7th Cir. 2003). When the last state court to issue an opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground, federal habeas review of the claim is foreclosed. *E.g.*, *Lambrix v. Singeltary*, 520 U.S. 518, 523, 117 S. Ct. 1517, 1522 (1997) (coll. cases). Typically this occurs when the petitioner failed to comply with a state procedural rule and the state court relied on that procedural default to refrain from reaching the merits of the federal claim. *See Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 2554 (1991) (coll. cases). A state ground is deemed "independent" for this purpose "only if the state court actually relied on a state rule sufficient to justify its decision." *Prihoda v. McCaughtry*, 910 F.2d 1379, 1382 (7th Cir. 1990). The adequacy of the state ground is a question of federal law, *Lee v. Kemna*, 534 U.S. 362, 375, 122 S. Ct. 877, 885 (2002); the ground is considered "adequate" only if the state court applies the rule "in a consistent and principled way," *Prihoda*, 910 F.2d at 1383. The adequate and independent state ground doctrine is subject to equitable exceptions. If the petitioner can demonstrate cause for his failure to comply with the state rule and prejudice resulting from the default, or alternatively that a miscarriage of justice will occur if he is not granted relief, then a federal court may reach the merits of his claim notwithstanding the adequate and independent basis for the state court ruling. *Harris v. Reed*, 489 U.S. 255, 262,

109 S. Ct. 1038, 1043 (1989).

In this case, there is no dispute as to the independence of the ground on which the Illinois Appellate Court disposed of Miranda's Fourth Amendment claim. Illinois law requires a convicted defendant to include any and all claims of error in a post-trial motion for a new trial. 725 ILCS 5/116-1; *People v. Enoch*, 522 N.E.2d 1124, 1129-30 (Ill. 1988).[2] The failure to comply with this requirement amounts to a waiver of the claim. *Id.* (coll. cases).[3] The Illinois Appellate Court, noting that Miranda had not pursued this issue in his post-trial motion, limited its review of this claim to one for plain error, pursuant to Illinois Supreme Court Rule 615(a). R. 17 at 1. Rule 615(a), in relevant part, provides that "[p]lain

---

[2] The Illinois Supreme Court in *Enoch* reiterated the reasons for the requirement that a defendant preserve by way of a post-trial motion any issues that he wishes to pursue on appeal:

> Failure to raise issues in the trial court denies that court the opportunity to grant a new trial, if warranted. This casts a needless burden of preparing and processing appeals upon appellate counsel for the defense, the prosecution, and upon the court of review. Without a post-trial motion limiting the consideration to errors considered significant, the appeal is open-ended. Appellate counsel may comb the record for every semblance of error and raise issues on appeal whether or not trial counsel considered them of any importance.

522 N.E.2d at 1130 (quoting *People v. Caballero*, 464 N.E.2d 223, 227 (Ill. 1984)).

[3] We are using "waiver," which is the term the Illinois cases typically use, in the broadest sense, to signify a forfeiture of the claim. *See United States v. Richardson*, 238 F.3d 837, 841 (7th Cir. 2001). True waiver entails the intentional relinquishment of a known right, which is not normally established by the mere failure to comply with a procedural requirement such as the filing of a post-trial motion. *See Lewis v. Sternes*, 390 F.3d 1019, 1029 (7th Cir. 2004).

errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." As we have previously recognized, an Illinois court does not reach the merits of a claim simply by reviewing it for plain error. *See, e.g., Neal v. Gramley*, 99 F.3d 841, 844 (7th Cir. 1996); *see also Rodriguez v. McAdory*, 318 F.3d 733, 735 (7th Cir. 2003) (coll. cases). Consequently, the plain-error analysis engaged in by the appellate court did not cure Miranda's default. *Id.*

The dispute instead focuses on whether the waiver rule was an adequate ground for the Illinois Appellate Court's decision not to reach the merits of his Fourth Amendment claim. Miranda contends, and the district court agreed, that the waiver rule is not adequate because the Illinois courts do not apply the rule in a consistent way. Their quarrel is not with the basic proposition that an issue must be raised in post-trial motion in order to be preserved for appeal. As we recognized in *White v. Peters*, 990 F.2d 338, 340 (7th Cir. 1993), that requirement has had a statutory basis since at least 1963 and has been repeatedly recognized and applied in Illinois cases. The concern, rather, is with the appellate court's unwillingness to apply an exception to the rule that the Illinois Supreme Court identified in *Enoch*. Although *Enoch* reaffirmed the obligation to preserve an issue by way of a post-trial motion, it also recognized three exceptions to this requirement, one of which is relevant here. *Enoch* indicated that the failure to include a constitutional claim in a post-trial motion will not constitute a waiver of that claim if the defendant raised the issue at trial and the issue is one that could be raised on post-conviction review. 522 N.E.2d at 1132; *see also People v. McCallister*, 737 N.E.2d 196, 214-15 (Ill. 2000) (applying exception to reach evidentiary ruling in capital case not raised in post-trial motion "because it concerns defendant's due process right to present a defense and because the claim was raised by the defense at trial").

However, as the district court recognized, the Illinois appellate courts are divided as to whether the constitutional-issue exception applies in non-capital cases. *Enoch* itself was a capital case, and the Illinois Supreme Court set forth the exceptions to the waiver rule while discussing the breadth of its review in cases where the death penalty had been imposed. 522 N.E.2d at 1131-32. In *People v. Alexander*, the Illinois Appellate Court for the First District (which embraces Cook County, where Miranda was tried) concluded that *Enoch*'s exception for constitutional issues raised at trial did not apply in cases where the death penalty had not been imposed, but rather that such issues were reviewed for plain error alone. 571 N.E.2d 1075, 1083 (Ill. App. Ct. 1991).

> We . . . hold that review of even a constitutional issue is waived by failure to properly preserve it in a post-trial motion, unless the error reasonably could have affected the verdict or if it would have resulted in a failure to afford the defendant due process of law. We believe that the holding in *Enoch* was clearly intended to govern direct reviews by the Illinois Supreme Court of "cases in which a sentence of death was imposed," (*Enoch*, 122 Ill.2d 176 at 190, 119 Ill. Dec. 265, 522 N.E.2d 1124; Ill. Const. 1970, art. VI sec. 4(b)), and that limiting our review to issues which could reasonably have affected the verdict still adequately ensures that serious injustices are corrected and that the integrity and reputation of the judicial process is preserved. *People v. Young* (1989), 128 Ill.2d [1] at 46, 131 Ill. Dec. 78, 538 N.E.2d 453.

571 N.E.2d at 1083. The court acknowledged that "the authorities are not in harmony on this issue," and that a number of cases in the First District had reached the merits of constitutional issues not properly preserved by way of a post-trial motion. *Id.* The court did not believe that its holding was irreconcilable with those cases, however. It rea-

soned that the constitutional errors asserted in those cases either were entirely without merit or were so serious as to have either compelled a new trial or to have foreclosed a trial altogether. *Id.*

Unfortunately, the same division of authorities that *Alexander* recognized and attempted to resolve has persisted in the wake of that decision. Other appellate districts either have expressly rejected *Alexander*'s holding or, without discussion of the conflict in authority, have reached the merits of constitutional issues in non-capital cases notwithstanding the fact that they were not preserved by way of post-trial motions. *See People v. Burnfield*, 692 N.E.2d 412, 416 (Ill. App. Ct. 5th Dist. 1998) (expressly rejecting *Alexander* and reviewing suppression issue notwithstanding defendant's failure to raise that issue in post-trial motion) (following *People v. Torres*, 669 N.E.2d 1279, 1284 (Ill. App. Ct. 3d Dist. 1996) (acknowledging that failure to file post-trial motion constituted "technical" waiver of suppression issue, but finding that motion before or during trial sufficed to preserve issue)); *see also, e.g.*, *People v. Moore*, 804 N.E.2d 595, 598-99 (Ill. App. Ct. 4th Dist. 2003) (applying constitutional exception to reach due process and equal protection issues) (citing *People v. Cox*, 693 N.E.2d 483, 485 (Ill. App. Ct. 4th Dist. 1998) (applying constitutional exception to suppression issue)); *People v. Komes*, 749 N.E.2d 382, 386 (Ill. App. Ct. 2d Dist. 2001) (in a non-capital case, listing *Enoch*'s constitutional exception as among exceptions to waiver rule that might apply). Even within the First District, the cases remain inconsistent in their discussion and application of the waiver rule. Although we can find no published First District decision that reaffirms and applies *Alexander*'s holding, there are some decisions which, consistent with *Alexander* (although not citing it), indicate that examination of constitutional issues not properly preserved by way of, inter alia, a post-trial motion is confined to plain-error review. *See People v. Dunn*, 760 N.E.2d 511, 515-16 (Ill. App.

Ct. 1st Dist. 2001) (reviewing waived perjury claim for plain error because it "alleges a violation of substantial constitutional rights"); *People v. Bowman*, 758 N.E.2d 408, 419 (Ill. App. Ct. 1st Dist. 2001) (reviewing waived question regarding jury selection for plain error "because this issue affects the constitutional right to a fair trial"). But other cases have engaged in a complete merits review of issues not preserved in a post-trial motion, relying on *Enoch*'s constitutional exception. *See People v. Falls*, 625 N.E.2d 313, 317-19 (Ill. App. Ct. 1st Dist. 1993) (reviewing suppression issues implicating constitutional rights notwithstanding court's presumption that defendant had not preserved them via post-trial motion); *People v. Williams*, 599 N.E.2d 1033, 1035 (Ill. App. Ct. 1st Dist. 1992) ("Although we conclude that the claim of an illegal arrest has been waived, we will review it in the interest of judicial economy, as it involves a constitutionally based issue.").

The ongoing inconsistency might be explained by the principle, often recognized in Illinois cases, that waiver binds the parties but not the courts. *E.g.*, *People v. Segoviano*, 725 N.E.2d 1275, 1282 (Ill. 2000); *People v. Farmer*, 650 N.E.2d 1006, 1009 (Ill. 1995); *see also People v. Terrell*, 708 N.E.2d 309, 339 (Ill. 1998) (Freeman, C.J., concurring). Invocation of that principle enables a court to "obtain[ ] a just result and maintain[ ] a consistent body of precedent" notwithstanding a defendant's failure to preserve a claim of error. *Segoviano*, 725 N.E.2d at 1282. Unfortunately, the uneven application of the waiver rule and the exceptions to the rule also makes it difficult, if not impossible, for litigants to predict how the rule will be applied. *Cf. Terrell*, 708 N.E.2d at 339 (Freeman, C.J., concurring) (criticizing majority's inconsistent application of waiver doctrine because, inter alia, it "creates confusion for application of the doctrine in future cases").

Despite the inconsistent treatment of the waiver rule in the Illinois courts, Miranda faces an uphill slope in the

effort to demonstrate that the rule is not an adequate basis for the appellate court's decision to abstain from the merits of his Fourth Amendment claim. We often describe a rule that might fail the adequacy test as one that is invoked "infrequently, unexpectedly, or freakishly." *Prihoda v. McCaughtry*, *supra*, 910 F.2d at 1383; *see also Page v. Frank*, *supra*, 343 F.3d at 908-09; *Thomas v. McCaughtry*, 201 F.3d 995, 1000 (7th Cir. 2000); *Tredway v. Farley*, 35 F.3d 288, 295 (7th Cir. 1994); *Lilly v. Gilmore*, 988 F.2d 783, 785 (7th Cir. 1993); *Bobo v. Kolb*, 969 F.2d 391, 399 (7th Cir. 1992); *cf. Lee v. Kemna*, *supra*, 534 U.S. at 376, 122 S. Ct. at 885 ("Ordinarily, violation of 'firmly established and regularly followed' state rules . . . will be adequate to foreclose review of a federal claim.") (quoting *James v. Kentucky*, 466 U.S. 341, 348, 104 S. Ct. 1830, 1835 (1984)). It would be difficult to characterize the rule deeming claims waived if not included in a post-trial motion as such an aberrant rule. We noted in *Prihoda* that a rule need not be followed strictly in order for it to constitute an adequate ground for the state court's decision. 910 F.2d at 1384 ("A state ground that is solidly established will be respected even though not 'strictly' followed"). Whatever inconsistencies there may be in the Illinois courts' application of the rule, invocation of the rule as a procedural bar could hardly be described as surprising, particularly in the First District, where Miranda was convicted. *See Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000) (state rule not adequate if prisoner could not fairly have been deemed to be apprised of its existence at the time she acted); *Thomas*, 201 F.3d at 1000-01 (same); *but see Rosa v. Peters*, 36 F.3d 625, 633-34 (7th Cir. 1994) (finding that defendant's failure to make a record of the racial composition of the jury in support of his *Batson* claim was not an adequate ground for state court finding that the claim was barred, in view of fact that Illinois courts do not uniformly require such a record); *see also Thomas*, 201 F.3d at 1001 (suggesting that rule applied in "inconsistent" way would not be adequate ground for state court's decision). Moreover, our own cases have cited the waiver

rule as an adequate and independent ground for the decisions of Illinois courts. *E.g.*, *Rodriguez v. McAdory*, *supra*, 318 F.3d at 735; *White v. Peters, supra*, 990 F.2d at 340-41 & n.1; *see also Aliwoli v. Gilmore*, 127 F.3d 632, 634 (7th Cir. 1997) ("If a claim is found to be waived by an Illinois appellate court, that constitutes an independent and adequate state ground and we will not entertain that claim.").

Indeed, in *White*, we rejected the notion that Illinois' waiver rule was inadequate notwithstanding the petitioner's allegation that it was "frequently ignored" by the Illinois courts. *Id.* at 340 n.1.

> We believe that the rule requiring that all issues for appeal be preserved in a written post-trial motion is solidly established in Illinois law. The rule has had a statutory source since at least 1963, *see* Ill. Rev. Stat., ch. 38 ¶ 116-1, and the Illinois Supreme Court has repeatedly held that issues not contained in a written post-trial motion are waived on appeal even though a timely objection was interposed at trial. *See People v. Szabo*, 113 Ill.2d 83, 100 Ill. Dec. 726, 730, 497 N.E.2d 995, 999 (1986), *cert. denied*, 479 U.S. 1101, 107 S. Ct. 1330, 94 L.Ed.2d 181 (1987); *People v. Pickett*, 54 Ill.2d 280, 296 N.E.2d 856, 857 (1973). *People v. Enoch* [on which the Illinois Appellate Court had relied in finding White's claim waived] could be considered unexpected only to the extent that it required compliance with the written motion rule in capital as well as non-capital cases. Consequently, we conclude that the procedural rule upon which the Illinois Appellate Court relied in refusing to consider White's argument is "solidly established" and thus that White's default under that rule bars relief in a federal habeas proceeding absent showings of both cause and prejudice.

990 F.2d at 340-41 (footnote omitted).

To be sure, our opinion in *White* dealt not with any of the exceptions to the waiver rule discussed in *Enoch*, but rather with a purported practice in Illinois courts of allowing a general oral motion for a new trial to substitute for a written motion. *See id.* at 340. By contrast, here we are dealing with an exception established by the Illinois Supreme Court for constitutional issues, an exception that the Supreme Court has not (yet) expressly limited to capital cases and one that the state appellate courts have applied and continued to apply in non-capital cases. So, *White* does not necessarily foreclose a determination that the waiver rule is an inadequate ground for a state court's decision as to a constitutional claim that satisfies *Enoch*'s criteria for the constitutional exception. Still, *White* does tend to negate the notion that inconsistencies in the application of the waiver rule will, in and of themselves, render the rule inadequate for purposes of the procedural default inquiry. *Id.* at 340-41 & n.1; *see also White v. Lane*, 785 F. Supp. 768, 774-75 (N.D. Ill. 1992) (inconsistent appellate court practice regarding exceptions to waiver rule did not render rule inadequate), *judgment aff'd*, 990 F.2d 338.

In our view, what dooms Miranda's argument vis-à-vis the adequacy of the waiver rule is his own concession before the Illinois Appellate Court that he had waived the Fourth Amendment claim. At bottom, Miranda's contention is that the appellate court should have reviewed that claim on the merits pursuant to *Enoch*'s exception for constitutional issues properly raised at trial and amenable to review in post-conviction proceedings. But Miranda never asked the appellate court to apply that exception. Of course, it is quite possible that had he done so, the court nonetheless would have refused to entertain the claim on its merits and confined its review to one for plain error, consistent with *Alexander*. On the other hand, the court might have granted his request, consistent with cases in the First District and other appellate districts that have invoked *Enoch*'s constitu-

tional exception in non-capital cases. What is relevant for our purposes is that the court was not asked to make that choice. Miranda's argument conceded that he had waived a merits-based review of his claim and that, consequently, he was entitled to no more than plain-error review. Miranda stated as follows in his opening brief:

> The issue was not preserved in the defendant's motion for a new trial. The defendant is asking this Court to review the error, pursuant to Illinois Supreme Court Rule 615(a), because [of] the magnitude of the alleged error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court. . . .

R. 9 Ex. A at 12. Miranda's reply brief reiterated the concession. *Id.* Ex. C at 3. Thus, any doubt as to whether the court would have applied the constitutional exception is beside the point. Miranda cannot claim to be the surprised victim of an infrequent, unexpected, or freakish application of the waiver rule when he conceded waiver and did not invoke any exception that would have permitted more than plain-error review. His own briefs before the Illinois Appellate Court reveal that he was not only aware of the waiver rule but anticipated that the rule would preclude a merits review of his Fourth Amendment claim. There certainly is no indication that the appellate court blind-sided Miranda or invoked the waiver rule in an unprincipled or discriminatory way. *See Prihoda*, 910 F.2d at 1383 (lack of notice and consistency in application of state rule may show that state is discriminating against federal right asserted). On the contrary, the court handled his claim in precisely the manner that Miranda contended that the court should, limiting its review to one for plain error. Under these circumstances, Miranda is in no position to argue that the waiver rule is not an adequate ground for the Illinois Appellate Court's decision. *Cf. DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) (habeas petitioners had for-

feited argument that Article III judge was required to conduct extradition proceeding, when at time of extradition hearing they contended the opposite).

For these reasons, we conclude that the Illinois Appellate Court's disposition of Miranda's Fourth Amendment claim rests on an adequate and independent state ground, namely that he waived the claim when he failed to assert it in a post-trial motion for a new trial, as required by Illinois law. Miranda has not argued that an equitable exception would permit us to reach the merits of his claim notwithstanding the procedural default. Consequently, federal review of this claim is barred.

However, in an abundance of caution, and recognizing the inconsistency in Illinois cases as to the availability of appellate review for constitutional claims not preserved in post-trial motions, we have gone on to consider whether Miranda enjoyed a full and fair opportunity to litigate his Fourth Amendment claim in state court. Lest there be any doubt, our analysis as to the full and fair opportunity represents an alternative basis for our decision.

## B.   Full and Fair Opportunity

So long as a habeas petitioner enjoyed an "opportunity for full and fair litigation of a Fourth Amendment claim" in state court, federal habeas review of the claim is barred. *Stone v. Powell*, *supra*, 428 U.S. at 481-82, 96 S. Ct. at 3046. A petitioner has had the benefit of such an opportunity so long as (1) he clearly apprised the state court of his Fourth Amendment claim along with the factual basis for that claim, (2) the state court carefully and thoroughly analyzed the facts, and (3) the court applied the proper constitutional case law to those facts. *Pierson v. O'Leary*, 959 F.2d 1385, 1391 (7th Cir. 1992); *see also Cabrera v. Hinsley*, 324 F.3d 527, 531-32 (7th Cir.), *cert. denied*, 540 U.S. 873, 124 S. Ct. 220 (2003); *Hampton v. Wyant*, 296 F.3d 560, 563-64 (7th

Cir. 2002). The full and fair hearing requirement applies not only at the trial-court level in state court but also on direct review of the petitioner's conviction. *See Stone*, 428 U.S. at 489, 96 S. Ct. at 3050 ("The question is whether state prisoners—who have been afforded the opportunity for full and fair consideration of their reliance on the exclusionary rule . . . by the state courts at the trial level *and on direct review*—may invoke their claim again on federal habeas corpus review.") (emphasis supplied); *see also, e.g.*, *Hampton*, 296 F.3d at 563-64; *Turentine v. Miller*, 80 F.3d 222, 225-26 (7th Cir. 1996).

Miranda contends that the Illinois Appellate Court deprived him of a full and fair opportunity to litigate his Fourth Amendment claim in that it failed to carefully and thoroughly analyze the facts. That failure, in Miranda's view, is evidenced by the appellate court's determination, without any explanation, that Chavez was not under arrest. Summary Order at 3. Whether an individual was seized by the police is a highly fact-specific assessment that requires consideration of the totality of the circumstances. *United States v. McCarthur*, 6 F.3d 1270, 1275-76 (7th Cir. 1993). We have indicated that when a state court's Fourth Amendment analysis turns on factual determinations that lack the fair support of the record, we cannot say that the court carefully and thoroughly analyzed the facts. *Weber v. Murphy*, 15 F.3d 691, 694 (7th Cir. 1994); *contra Willett v. Lockhart*, 37 F.3d 1265, 1270 (8th Cir. 1994) (en banc) ("We conclude that under *Stone* a federal habeas court considering a state prisoner's claim alleging a Fourth Amendment violation should abstain from reviewing the state court records to determine if the state court's factual findings are fairly supported by the record as a whole . . . ."); *see also Turentine*, 80 F.3d at 225-26 (declining to overrule *Weber* in light of *Willett*). Of course, we presume that a state court's factual determinations are correct. 28 U.S.C. § 2254(e)(1); *see Weber*, 15 F.3d at 694-95. We have also made clear that

mistakes in a state court's treatment of a petitioner's Fourth Amendment claim are not sufficient, in and of themselves, to surmount the *Stone* bar. *Turentine*, 80 F.3d at 225-26; *see also Hampton*, 296 F.3d at 563-64. *Stone* does not guarantee a correct outcome on a Fourth Amendment claim but rather an adequate opportunity to pursue the claim in the state court system; thus, only if we are convinced that a habeas petitioner was deprived of that opportunity may we reach the merits of the claim. *Cabrera*, 324 F.3d at 531-32. An "egregious error" in a state court's Fourth Amendment decision may suffice for this purpose, *Turentine*, 80 F.3d at 226, but not for the flaw it exposes in the state court's analysis but rather for what it reveals about the bona fides of the state court's handling of the Fourth Amendment claim, *Hampton*, 296 F.3d at 564. As we explained in *Hampton*, "a blunder, no matter how obvious, matters only in conjunction with other circumstances that imply refusal by the state judiciary to take seriously its obligation to adjudicate claims under the fourth amendment." *Id.* We shall assume, without deciding, that if the Illinois Appellate Court's determination that Chavez was not arrested lacked *any* basis in the record, Miranda may have been deprived of a full and fair opportunity to litigate his Fourth Amendment claim in state court.

We note at the outset that the state trial court never made a definitive ruling as to whether and when Chavez was arrested by the police. Chavez was never charged with a crime, so he was not a party to the state court proceeding. Nonetheless, the trial court did have occasion to consider how Chavez was treated by the police in the course of resolving Miranda's motion to quash and suppress. As the district court pointed out, the trial judge stated that he thought the police put handcuffs on Chavez; he then added that he was "not sure" whether Chavez was one of the two people in the living room of the Perez residence but that "[t]he two [people] that were in the living room were placed

into handcuffs." M37; *see* R. 17 at 5. In its brief to the Illinois Appellate Court, the State suggested that the trial judge was referring to Perez and Miranda, not Chavez. R. 9 Ex. B at 43. But considered in context, the judge's reference to the two young men in the living room could only have meant Chavez and Miranda, for by the time police officers entered the living room, Perez had already been handcuffed in the kitchen. Moreover, as the district court also pointed out, the police had no reason to treat Chavez differently from Miranda at the Perez residence, as they had no information at that point implicating anyone but Perez in the crime. R. 17 at 5. It bears mentioning again that the police denied having handcuffed or otherwise seized either Miranda *or* Chavez at the Perez residence. But the trial judge discredited that assertion as to Miranda, and he appears to have likewise discredited it as to Chavez. It seems altogether likely, then, that the judge would have found that Chavez was arrested had he made an explicit finding on that point.

But if we take it as a given that Chavez, like Miranda, was illegally arrested at the Perez residence, that does not necessarily mean that he remained under arrest throughout the ensuing period of his cooperation with the authorities. An individual's wrongful custody can, of course, be brought to an end, and when such a termination occurs, it can serve to break the causal link between the illegal arrest and his subsequent statements to the police. 6 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 11.4, text accompanying n.182 (4th ed. 2004) ("[t]ermination of the illegal custody, as in *Wong Sun* [*v. United States*, 371 U.S. 471, 83 S. Ct. 407 (1963)], qualifies as an intervening circumstance" that may purge post-arrest confession of taint of unlawful arrest); *see also, e.g., State v. Miller*, 921 P.2d 1151, 1157-58 (Ariz. 1996); *Hanna v. State*, 591 A.2d 158, 165 (Del. 1991); *Sanchez-Velasco v. State*, 570 So.2d 908, 914 (Fla. 1990). It is possible, then, that the

Illinois Appellate Court, focusing on the time at which Chavez made his post-arrest statement implicating Miranda in the shooting, concluded that Chavez was no longer under arrest at that point in time and that his statement was untainted by his wrongful arrest. The court's statement ("Chavez was not illegally arrested") is not time-specific and so does not preclude this possibility. We realize that the court's statement could be interpreted differently (*e.g.*, to mean that Chavez was never arrested). However, having in mind that our task under *Stone* is not to decide whether the court made a mistake in assessing the facts, but rather whether it committed an error so grave as to indicate that the court "closed [its] ears and mind[ ] to argument," *Hampton*, 296 F.3d at 564, we believe ourselves obliged to entertain any reasonable construction of the appellate court's opinion. Because it is plausible to construe the court's statement as meaning that Chavez was not under wrongful arrest when he implicated Miranda, we proceed to consider whether the evidence supported such a finding.

For his part, the trial judge never reached the question of whether Chavez remained in custody once he arrived at the police station and underwent further questioning there. However, an appellate court is empowered to make a factual determination, *see Cereal Byproducts Co. v. Hall*, 155 N.E.2d 14, 16 (Ill. 1958); Ill. Sup. Ct. R. 366(a)(4), and on habeas review we must grant that determination the same presumption of correctness as we would to a trial court's finding of fact. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 546-47, 101 S. Ct. 764, 769 (1981); *Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000). Thus, so long as there was an adequate evidentiary basis in the record for finding that Chavez was not under arrest when he inculpated Miranda, we must defer to that finding and conclude that the Illinois Appellate Court did not deprive Miranda of a full and fair opportunity to pursue his Fourth Amendment claim.

The district court, in assessing the evidentiary basis for the Illinois Appellate Court's analysis, was disadvantaged by the lack of a complete record of the proceedings in the trial court on Miranda's motion to suppress. Based on the limited record before it and the parties' arguments, the district court assumed that Miranda did not have a full and fair opportunity to litigate his Fourth Amendment claim in the Illinois courts, as it was not clear to the court what basis the appellate court might have had for finding that Chavez was not arrested. R. 17 at 5-6. We asked the Illinois Attorney General to supplement the record with a complete transcript of the proceedings that the trial court conducted on Miranda's motion to quash his arrest and suppress his post-arrest statements. On review of that transcript, we conclude that there is fair support in the record for a finding that Chavez was not under arrest when he implicated Miranda.

There was testimony indicating that Chavez was not under arrest at the time he told police that Miranda was the source of the gun that Perez had used to shoot Ryan. Chavez himself testified that he was handcuffed at the Perez residence, A171, but that the cuffs were removed at the police station, A175. Officer Frugoli, who was present at the Perez residence when Perez was arrested, said that Chavez was not in cuffs when he was taken to station, was not told he was under arrest, and in fact was free to go. A83, A109-110, A115. Detective Schak, who interviewed Chavez at the police station, testified that Chavez was not in cuffs, was not locked in the interview room, was not in custody, and had come to the station voluntarily. A161-62. Assistant State's Attorney Studenroth, who took Chavez's formal statement that evening, testified that Chavez was not under arrest. D7. In view of this testimony, the Illinois Appellate Court was not without an evidentiary basis to find that Chavez was no longer in custody by the time he gave the statement that prompted Miranda to confess his involvement in the

shooting: multiple witnesses testified that Chavez was not arrested and was not confined at the police station but rather was voluntarily cooperating with the police, and even Chavez agreed that the handcuffs were removed once he arrived at the police station. Moreover, assuming, consistent with this testimony, that Chavez's illegal arrest had been terminated upon or shortly after his arrival at the police station, his subsequent statement inculpating Miranda could plausibly be deemed the product of free will notwithstanding the initial illegal arrest. *See* 6 LaFave, *supra*, § 11.4 n.182 (coll. cases).

Certainly there was contrary evidence presented to the trial court. Chavez not only testified that he was handcuffed at the Perez home, but both he and his father gave testimony indicating that he was not free to leave the police station even after the handcuffs were removed. Chavez testified that he was told he could go home after he gave his formal statement to the Assistant State's Attorney, A177, but ultimately he was kept at the station overnight (in anticipation of his grand jury testimony the following morning) even after he gave that statement, A178. His father confirmed that Chavez was detained at the station overnight against the family's wishes. A189-91. It also bears noting that at 15 years of age, Chavez might not have appreciated his ability to leave the police station even if he was not overtly coerced into staying. In view of this evidence, a court reasonably could have concluded that Chavez remained under arrest when he gave the statement implicating Miranda.

However, the question before us is not whether (in our view) the Illinois Appellate Court was right or wrong to find that Chavez was not under arrest, but whether that finding was so gravely mistaken, in view of the record evidence, as to suggest that the Illinois Appellate Court was unwilling to engage in a good faith review of Miranda's Fourth Amendment claim. *See Cabrera v. Hinsley*, *supra*, 324 F.3d at 531-32; *Hampton v. Wyant*, *supra*, 296 F.3d at 563-64.

Because the court's finding could be construed as one focused on the point in time at which Chavez gave his statement inculpating Miranda, and because there was at least some evidentiary support for the court's finding so construed, we are bound to answer this question in the negative. Our inquiry is therefore at an end. Chavez had a full and fair opportunity to litigate his Fourth Amendment claim in state court, and thus, pursuant to *Stone v. Powell*, further review of that claim in federal court is foreclosed.

### III.

Having concluded that the Illinois Appellate Court resolved Miranda's Fourth Amendment claim on an adequate procedural ground independent of the merits of that claim and, alternatively, that Miranda had a full and fair opportunity to litigate his Fourth Amendment claim in state court, we AFFIRM the district court's judgment denying Miranda's petition for a writ of habeas corpus. We thank Miranda's appointed appellate counsel for their vigorous advocacy on his behalf.

A true Copy:

      Teste:

                                   _____
                                   *Clerk of the United States Court of*
                                   *Appeals for the Seventh Circuit*